**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **Purl, M.D.**, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **Civil Action No. 2:24-cv-228-Z** |
| | § | |
| **United States Department of** | § | |
| **Health and Human Services**, et al., | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
MOTION TO INTERVENE**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Introduction ...................................................................................................... 1

Factual Background ......................................................................................... 1

Argument ......................................................................................................... 3

I.    The motion to intervene fails to satisfy Federal Rule of Civil Procedure
      24(c). ...................................................................................................... 3

II.   Proposed Intervenors are not entitled to intervene as of right. ...................... 4

      A.   Proposed Intervenors should not be permitted to delay this case
           further. ........................................................................................ 4

      B.   Proposed Intervenors do not have a recognizable, direct,
           significant, protectable legal interest in this matter. ............................. 4

           1.   Proposed Intervenors' interests are essentially political. ............ 5

           2.   Proposed Intervenors' status as covered entities under
                HIPAA does not by itself constitute a sufficient interest for
                Rule 24(a) purposes. ........................................................... 8

                a)   *Not* being regulated is not an injury. ................................. 8

                b)   Proposed Intervenors are not beneficiaries under the
                     2024 Rule and it gives them no rights. ............................. 10

           3.   Proposed Intervenor's expenditures to comply with the 2024
                Rule do not entitle them to intervene to defend it. .................... 11

      C.   Interests identified by Proposed Intervenors have been adequately
           represented by existing parties. ........................................................ 14

           1.   Proposed Intervenors' objectives overlap with the
                Defendants' existing written submissions to this Court. ............ 14

           2.   Proposed Intervenors' concerns that existing Defendants will
                not defend the 2024 Rule are speculative. ............................. 15

III.  The Court should deny permissive intervention. .......................................... 16

Conclusion ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*,
19 F.3d 241 (5th Cir. 1994) ............................................................................. 13

*City of Houston v. American Traffic Solutions, Inc.*,
668 F.3d 291 (5th Cir. 2012) ........................................................................... 12

*Cooper v. Texas Alcoholic Beverage Commission*,
820 F.3d 730 (5th Cir. 2016) ........................................................................... 10

*DeOtte v. Nevada*,
20 F.4th 1055 (5th Cir. 2021) ............................................................................ 3

*Department of Education v. Brown*,
600 U.S. 551 (2023) .......................................................................................... 9

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022) .......................................................................................... 1

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ....................................................................................... 8, 9

*Haspel & Davis Milling & Planting Co. v. Board of Levee Commissioners of the Orleans Levee District*,
493 F.3d 570 (5th Cir. 2007) ........................................................................... 14

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........................................................................................ 13

*In re Toyota Hybrid Brake Litigation*,
2020 WL 6161495 (E.D. Tex. Oct. 21, 2020) ................................................. 15

*Kneeland v. National Collegiate Athletic Ass'n*,
806 F.2d 1285 (5th Cir.1987) .......................................................................... 14

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ............................................................................. 5

*Lane v. City of Houston*,
2024 WL 4354116 (S.D. Tex. Sept. 30, 2024) ................................................ 11

*NAACP v. City of Kyle*,
626 F.3d 233 (5th Cir. 2010) ........................................................................... 13

*National Horsemen's Benevolent & Protective Ass'n v. Black*,
    2022 WL 974335 (N.D. Tex. Mar. 31, 2022) .................................................... 8

*New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) ................................................. 4, 5, 9, 11

*Rogers v. 12291 CBW, LLC*,
    2021 WL 11247562 (E.D. Tex. Dec. 13, 2021) ................................................. 11

*Shevlin v. Schewe*,
    809 F.2d 447 (7th Cir. 1987) .................................................................. 3

*Texas v. United States*,
    787 F.3d 733 (5th Cir. 2015) ............................................................ 11

*Turner v. Cincinnati Insurance Co.*,
    9 F.4th 300 (5th Cir. 2021) ............................................................ 16

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*,
    834 F.3d 562 (5th Cir. 2016) ........................................................ 9, 10

## Other Authorities

10TV Web Staff, Elected officials react to Issue 1 passing in Ohio,
    10 WBNS (Nov. 8, 2023, 6:40 AM) ..................................................... 5

City of Columbus, *Commissioners* .................................................. 6

City of Columbus, *Sexual Health and Wellness Center* ................................................ 6

Doctors for America, *Advancing Gender-Affirming Care: From Education to
    Legislation* ................................................................ 7

Doctors for America, Doctors for America's FDA Task Force Files Amicus
    Brief to Protect Patients' Access to Medication Abortion (Feb. 13, 2023) ........ 7

Doctors for America, *Federal preemption and its impact on state restrictions
    limiting access to mifepristone and abortion care* ............................................. 7

Doctors for America, *Health Justice & Equity Action Event: Abortion
    Advocacy for Physicians* ......................................................... 7

Doctors for America, *Health Justice and Equity* .................................................... 7

Mayor Andrew Ginther, @GintherForCbus, X (Apr. 13, 2023, 8:00 AM) .................... 5

Satya Rhodes-Conway, *City of Madison 2023 Executive Summary: Executive Operating Budget* ......................................................................... 7

Satya Rhodes-Conway, Mayor Satya Rhodes-Conway: Statement on the Overturning of *Roe v. Wade* (June 24, 2022) ....................................... 6

United States Department of Health & Human Services Office for Civil Rights, *Standards for Privacy of Individually Identifiable Health Information* ............................................................................. 13

Zach Klein, Columbus City Attorney Zach Klein Announces Office's Position on Prosecuting Abortion Cases following Supreme Court Decision (June 27, 2022) ...................................................................... 6

Zach Klein, Columbus City Attorney Zach Klein Says Kansas Vote Affirms Broad Support for Abortion Access Nationwide, Including in Ohio (Aug. 3, 2022) .......................................................................... 5

Zach Klein, Columbus Leads Coalition of Cities and Counties Standing Against Mississippi's Law to Ban Abortion After 15 Weeks of Pregnancy, a Direct Challenge to *Roe v Wade* (Sept. 20, 2021) ...................... 5

## Rules

Federal Rule of Civil Procedure 24 ........................................................... 3, 4

Federal Rule of Civil Procedure 7(a) ........................................................... 3

## Regulations

45 C.F.R. § 164.520 .......................................................................... 10

45 C.F.R. § 164.522 .......................................................................... 10

45 C.F.R. § 164.526 .......................................................................... 10

45 C.F.R. § 164.528 .......................................................................... 10

HIPAA Privacy Rule to Support Reproductive Health Care Privacy, 89 Fed. Reg. 32,976 (Apr. 26, 2024)........................................... 1, 2, 14

Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82,462 (Dec. 28, 2000).......................................... 1, 13

## INTRODUCTION

The Court should deny the motion to intervene of the out-of-circuit municipalities and Doctors for America (collectively, "Proposed Intervenors") for three reasons. First, their motion failed to satisfy Federal Rule of Civil Procedure 24(c), which requires that they file a "pleading" with the motion. They filed, not a pleading, but a proposed brief. Their failure to satisfy even this basic requirement suggests they would not adequately represent their purported interests and should not be allowed to delay the case beyond this Court's existing schedule. Second, the Proposed Intervenors lack a sufficiently significant, legally protectable interest that could be impaired by this case's outcome. Third, they have not proven that the U.S. Department of Health and Human Services (HHS) needs to be supplanted.

## FACTUAL BACKGROUND

In response to *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), HHS modified the Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82,462 (Dec. 28, 2000) (the Privacy Rule). HIPAA Privacy Rule to Support Reproductive Health Care Privacy, 89 Fed. Reg. 32,976, 32,977–78, 32,987 (Apr. 26, 2024) (the 2024 Rule). The 2024 Rule restricted providers' ability to disclose patients' protected health information (PHI) involving reproductive health care. *Id.*

Plaintiffs, Dr. Purl and her clinic in Dumas, Texas (collectively, "Dr. Purl"), seek declaratory and injunctive relief from the 2024 Rule. Dr. Purl seeks relief on grounds that the 2024 Rule exceeded HHS's rulemaking authority and is arbitrary, capricious, an abuse of discretion, and unlawful. ECF No. 1 at 18–20.

This Court preliminarily enjoined Defendants from enforcing the 2024 Rule against Dr. Purl. *See* ECF No. 34, Mem. Op. & Order (Dec. 22, 2024). This Court found that Dr. Purl faces irreparable harm, has established a likelihood of success

on the merits, and that equity and the public interest would be served by enjoining the 2024 Rule. *Id.* at 12, 19. As this Court observed, the 2024 Rule would force Dr. Purl to incur "nonrecoverable costs of complying with a putatively invalid regulation," *id.* at 8 (cleaned up), and it imposes "precisely [the type of] restraints and impediments that Congress forbade when it comes to child-abuse reporting," *id.* at 18. On the schedule set by the Court, the parties filed motions and briefs requesting summary judgment, ECF Nos. 39, 40, 44, 45, and on the same day Proposed Intervenors moved to intervene, ECF No. 49.

Existing Defendants have defended the 2024 Rule, both opposing preliminary relief and moving to dismiss and for summary judgment. Defendants argue the 2024 Rule was needed to promote trust between health care patients and providers—*see*, *e.g.*, ECF No. 29 at 8 (citing Pub. L. 104-191), 11 (citing 89 Fed. Reg. at 32,978), 28 (citing 89 Fed. Reg. at 32,984), and 31. Defendants use the phrase "public health" more than 30 times in their response to Dr. Purl's motion for preliminary injunction, ECF No. 29.

Proposed Intervenors similarly move to intervene to preserve trust between health care patients and providers. *See* ECF No. 50 (using the phrase "public health" 35 times). Proposed Intervenors consist of the City of Columbus, Ohio; the City of Madison, Wisconsin; and Doctors for America, a progressive advocacy organization. Proposed Intervenors posit the unusual theory that they have a significant, legally protectable interest in being *more* highly regulated by the federal government than they were a few months ago. Proposed Intervenors operated under the previous rule since it was first enacted in the year 2000.

## ARGUMENT

**I.     The motion to intervene fails to satisfy Federal Rule of Civil Procedure 24(c).**

The Court should deny the motion outright for failing to satisfy Federal Rule of Civil Procedure 24(c), under which a motion to intervene requires a proposed "pleading," one which "sets out the claim or defense for which intervention is sought." Proposed Intervenors did not submit a "pleading" with their motion. Instead, they submitted a proposed motion for summary judgment. A motion for summary judgment is not a pleading. Rule 7(a) defines a pleading as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; [or] (7) … a reply to an answer."

On a similar question, the Seventh Circuit held that a "memorandum opposing the settlement and dismissal" is for instance not a pleading. *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987) (upholding denial of motion to intervene). And this rule makes sense. "Lawsuits cannot be tried merely on memoranda." *Id.* It is true that the Fifth Circuit has said in a footnote that it takes a permissive approach to this question. *See DeOtte v. Nevada*, 20 F.4th 1055, 1067 n.2 (5th Cir. 2021). That context suggests, however, not that Rule 24(c) is optional, but that it is within this Court's discretion whether to disallow the Proposed Intervenors' failure to follow Rule 24(c). Based on the relative lateness of this motion in the proceedings, the interest stated by the Proposed Intervenors having a questionable relationship to this case, and there being no apparent excuse for not complying with the rule, the Court should exercise its discretion to deny the motion for this reason.

## II.    Proposed Intervenors are not entitled to intervene as of right.

Without a statutory right of intervention, courts only grant intervention when the intervenor (a) submits a timely motion, (b) "claims an interest relating to the property or transaction that is the subject of the action," (c) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (d) its interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2). Proposed Intervenors fall short.

### A.    Proposed Intervenors should not be permitted to delay this case further.

As noted above, Proposed Intervenors failed to satisfy the straightforward requirements of Rule 24(c) by failing to submit a pleading. The Court should deny the motion, which would negate the timeliness question.

Although technically the Court may consider a motion to intervene filed this late in the proceedings if it complies with Rule 24, it should not do so here. The Proposed Intervenors waited three months after this case was filed to file their motion. They waited until after the issues in the case were fully briefed and the Court ruled on the preliminary injunction. They waited until the same day on which the parties filed their cross-motions for summary judgment. And because of their failure to satisfy Rule 24, they have added even more delay if the Court allows them to cure their failure to submit a pleading. Allowing them to submit additional briefing would further delay the relief to which Dr. Purl is entitled, while adding to the litigation burdens of the Court and Dr. Purl.

### B.    Proposed Intervenors do not have a recognizable, direct, significant, protectable legal interest in this matter.

Intervention of right "requires a direct, substantial, legally protectable interest in the proceedings." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (cleaned up). The interest must "be one which

4

the substantive law recognizes as belonging to or being owned by the applicant." *Id.* at 464. "By contrast, intervention by right will not be granted for purely ideological, economic, or precedential reasons." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (cleaned up).

### 1.     Proposed Intervenors' interests are essentially political.

Proposed Intervenors' purported interests in defending the 2024 Rule omit their underlying commitment to promoting expansive abortion policy and gender ideology. Mayor Andrew Ginther of Columbus, Ohio is transparent in his support for abortion.[1] City Attorney Zach Klein used his official platform to provide amicus opposition to Mississippi in the *Dobbs* litigation[2] and to celebrate other states' permissive abortion policies.[3] In response to the *Dobbs* decision, Klein announced that his office would not prosecute "those who seek, assist in or provide abortions"

---

[1] Mayor Ginther tweeted his support for enshrining abortion rights in Ohio law at least 18 times in 2023. *See, e.g.*, @GintherForCbus, X (Apr. 13, 2023, 8:00 AM), https://x.com/GintherForCbus/status/1646498469819850756 ("Mayor Ginther is a champion for reproductive rights and he needs your help! Join the Mayor and Franklin County Democrats Saturday morning to assure Ohio's ballot initiative codifying abortion access makes the ballot."). When the ballot initiative passed, Ginther celebrated that his faction "silence[d]" pro-life advocates and declared that keeping abortion in Columbus made it a "better place." 10TV Web Staff, Elected officials react to Issue 1 passing in Ohio, 10 WBNS (Nov. 8, 2023, 6:40 AM), https://www.10tv.com/article/news/politics/elections/ginther-other-elected-officials-react-issue-1-passing-in-ohio/530-bb02ff2f-261a-4d13-ada4-a8593e82e6df.

[2] Press Release, Zach Klein, Columbus Leads Coalition of Cities and Counties Standing Against Mississippi's Law to Ban Abortion After 15 Weeks of Pregnancy, a Direct Challenge to *Roe v Wade* (Sept. 20, 2021), https://city-attorney.columbus.gov/pdf/press/columbus_leads_coalition_of_cities_and_counties_standing_against_missis sippi's_law_to_ban_abortion_after_15_weeks_of_pregnancy,_a_direct_challenge_to_roe_v_wade.pdf.

[3] Press Release, Zach Klein, Columbus City Attorney Zach Klein Says Kansas Vote Affirms Broad Support for Abortion Access Nationwide, Including in Ohio (Aug. 3, 2022), https://city-attorney.columbus.gov/pdf/press/columbus_city_attorney_zach_klein_says_kansas_vote_affirms_broad_support_for_abortion_access_nationwide,_in cluding_in_ohio.pdf.

regardless of state law.[4] Commissioner Melissa Benson's official biography emphasizes that she is a "passionate advocate for access to abortion and other reproductive health care," and that she "serves on the Board of the Pro-Choice Ohio Foundation."[5] Columbus provides free or low cost "HIV PrEP (medication to prevent HIV) provided the same day as your visit," same-day "[l]ong lasting birth control," and "[e]mergency contraception" without parental permission for teens.[6]

Madison, Wisconsin, is similarly led by staunch advocates for abortion and gender ideology. The day *Dobbs* was released, Mayor Satya Rhodes-Conway worried about "pregnant people" and warned, "Get ready—they will come for contraceptives; they will come for marriage equality."[7] The Madison Common Council passed a resolution affirming the Madison Police Department's refusal to enforce Wisconsin abortion laws.[8] And Rhodes-Conway's 2023 Executive Operating Budget Executive Summary says that *Dobbs* "created a health care emergency for women in

---

[4] Press Release, Zach Klein, Columbus City Attorney Zach Klein Announces Office's Position on Prosecuting Abortion Cases following Supreme Court Decision (June 27, 2022), https://city-attorney.columbus.gov/pdf/press/columbus_city_attorney_zach_klein_announces_office's_position_on_prosecuting_abortion_cases_following_supreme_court_decision.pdf.

[5] *Commissioners*, City of Columbus, https://www.columbus.gov/Government/Mayors-Office/City-Boards-Commissions-Committees/Womens-Commission/Commissioners (last visited Feb. 4, 2025).

[6] *Sexual Health and Wellness Center*, City of Columbus, https://www.columbus.gov/Services/Public-Health/Find-Health-Care-Resources/Sexual-Health-and-Wellness-Center (click on "Services") (last visited Feb. 4, 2025).

[7] Press Release, Satya Rhodes-Conway, Mayor Satya Rhodes-Conway: Statement on the Overturning of *Roe vs. Wade* (June 24, 2022), https://www.wispolitics.com/2022/mayor-rhodes-conway-statement-on-the-overturning-of-roe-vs-wade/.

[8] *Id.*

Madison," justifying a nearly half-million-dollar budget increase to expand staffing, hours, and "more comprehensive services" in Madison.[9]

Doctors for America (DFA) is a progressive nonprofit organization that seeks to influence abortion-related litigation from trial courts to the U.S. Supreme Court.[10] DFA also recruits and trains health professionals to advocate against any regulation of abortion[11] and gender-reassignment procedures.[12] Among its stated goals, DFA includes making "abortion ... more accessible" and supporting legislation that protects "gender affirming care."[13]

---

[9] Satya Rhodes-Conway, *City of Madison 2023 Executive Summary: Executive Operating Budget*, https://www.cityofmadison.com/finance/documents/budget/ 2023/operating/executive/ExecBudgetSummary.pdf.

[10] *See*, *e.g.*, Press Release, Doctors for America, Doctors for America's FDA Task Force Files Amicus Brief to Protect Patients' Access to Medication Abortion (Feb. 13, 2023), https://doctorsforamerica.org/press-release-doctors-for-americas-fda-task-force-files-amicus-brief-to-protect-patients-access-to-medication-abortion/.

[11] In 2022, DFA hosted a webinar to "share what advocacy efforts physicians can do related to abortion." *Health Justice & Equity Action Event: Abortion Advocacy for Physicians*, Doctors for America, https://doctorsforamerica.org/event/health-justice-equity-action-event-5/ (last visited Feb. 4, 2025). Recently DFA hosted a virtual event to "explore the role of the law of federal preemption ... and how clinicians can get involved." *Federal preemption and its impact on state restrictions limiting access to mifepristone and abortion care*, Doctors for America, https://doctorsforamerica .org/event/limiting-access-to-mifepristone/ (last visited Feb. 4, 2025)). Among its stated goals were to "encourage physicians to engage on these issues; highlight the case of *Bryant vs. Stein* [732 F. Supp. 3d 485 (M.D.N.C. 2024), *appeal docketed* July 9, 2024] and the need to support this challenge." *Id.*

[12] In 2023, DFA hosted a webinar to teach "strategies for ... expanding ['gender-affirming care'] with your medical school, residency program, or institution" and "talking points for engaging with colleagues, legislators, and media when advocating for ['gender-affirming care']." *Advancing Gender-Affirming Care: From Education to Legislation*, Doctors for America, https://doctorsforamerica.org/event/ advancing-gender-affirming-care-from-education-to-legislation/ (last visited Feb. 4, 2025).

[13] *Health Justice and Equity*, Doctors for America, https://doctorsforamerica.org/ impact-area/health-justice-and-equity/ (last visited Feb. 4, 2025).

In short, Proposed Intervenors appear to seek intervention because they agree with President Biden's rule and disagree with what they think President Trump's administration may do with it. That interest does not support intervention.

### 2. Proposed Intervenors' status as covered entities under HIPAA does not by itself constitute a sufficient interest for Rule 24(a) purposes.

Proposed Intervenors say that, because HIPAA covers them, they have shown a protectable interest in ensuring that HIPAA regulations continue to regulate them. That's nonsensical. The requested relief would relieve regulatory burdens on Proposed Intervenors. What's more, nothing in their declarations show a direct, non-attenuated interest in continuing to be regulated by the 2024 Rule.

### a) *Not* being regulated is not an injury.

Proposed Intervenors' position differs dramatically from cases in which regulated entities are allowed to intervene to challenged rules that burden them. For example, in *National Horsemen's Benevolent & Protective Ass'n v. Black*, the State of Texas and the Texas Racing Commission were found to have a "direct, substantial, legally protectable interest" in *opposing* regulations imposed on them by a corporation established by Congress to regulate the safety and integrity of the horseracing industry. No. 5:21-CV-071-H, 2022 WL 974335, at *5 (N.D. Tex. Mar. 31, 2022) (cleaned up).[14] In cases like these, a regulated party "normally" will not have a difficult time showing that a regulation causes it injury (for standing) or impairs a protectable interest (for purposes of intervention). As the Supreme Court stated in *Food & Drug Administration v. Alliance for Hippocratic Medicine*,

---

[14] The proposed intervenors in *National Horsemen's* were denied intervention of right as they failed to establish impairment or inadequate representation by existing parties. 2022 WL 974335, at *6. Those deficiencies in Applicants' application will be addressed below.

8

602 U.S. 367, 382 (2024) (emphasis added), "[g]overnment regulations *that require or forbid some action by the plaintiff* almost invariably satisfy both the injury-in-fact and causation requirements [of Article III standing]. So in those cases, standing[—and a threat to a legally protected interest—]is usually easy to establish."

But Proposed Intervenors do not seek to avoid doing something that the regulation requires of them, nor do they seek to do something that the regulation forbids. The regulation challenged here *adds* requirements and the relief sought would remove them. The Proposed Intervenors seek to *keep* these regulatory requirements by resisting the relief requested by Dr. Purl. That goal does not establish standing or show "a direct, substantial, legally protectable interest in the proceedings." *New Orleans Pub. Serv., Inc.*, 732 F.2d at 463 (cleaned up). An entity is not injured by *not being regulated. See, e.g.*, *Dep't of Educ. v. Brown*, 600 U.S. 551, 563–64 (2023) (rejecting standing where borrowers "claim they are injured because the Government has not adopted a lawful benefits program").

Proposed Intervenors point to *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission* and say that they "have an interest in a suit 'challenging the regulatory scheme that governs' them." ECF No. 50 at 13 (quoting *Wal-Mart*, 834 F.3d 562, 567 (5th Cir. 2016)). That's wrong. In that case, the Texas Package Stores Association sought to intervene in a lawsuit in which Wal-Mart alleged that the regulatory system administered by a state commission operated exclusively to benefit the Texas Package Store Association's members in violation of the United States Constitution. *Wal-Mart*, 834 F.3d at 564–65. In finding that the Association had a legally protectable interest in the regulatory scheme, the Fifth Circuit noted that Wal-Mart's lawsuit was "premised on the assumption that *the Association's members are the beneficiaries of this regulatory system*." *Id.* at 566 (emphasis added). Because the Association was the regulatory scheme's beneficiary, it had a

legally protected interest in avoiding the harms of increased competition. *Id. Accord Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 737 (5th Cir. 2016).

In contrast, while Proposed Intervenors are covered entities under HIPAA, they are not its beneficiaries. The 2024 Rule confers no rights on them, only obligations. Proposed Intervenors rightly note that the municipalities' health agencies and DFA's members "are subject to both civil and criminal liability for violating HIPAA." ECF No. 50 at 13. Yet they claim they have a significant, legally protectable interest in *preserving* punitive constraints on themselves.

### b) Proposed Intervenors are not beneficiaries under the 2024 Rule and it gives them no rights.

Nor do Proposed Intervenors have legally enforceable rights under HIPAA or its regulations. HIPAA and its administrative rules establish rights for *patients*, but *obligations* for covered entities. These include patient rights to request amendments to medical records, 45 C.F.R. § 164.526; to accounting of disclosures, § 164.528; to request restriction of uses and disclosure, § 164.522(a); to confidential communications, § 164.522(b); to notice of privacy practices, § 164.520; and to breach notification, § 164.404. HIPAA does confer protections from liability for covered entities if they disclose patient information under permitted circumstances, but those protections merely encourage compliance with the statutory and regulatory regime that creates and protects the rights given to patients. Proposed Intervenors do not here have such a patient beneficiary interest to be enforced.

Proposed Intervenors suggest that vacatur of the 2024 Rule would remove legally enforceable beneficial protections for them. The municipalities assert that they "rel[y] on HIPAA protections to preserve trust between [their] clinicians and patients as well as to protect the public health." ECF No. 50 at 8. DFA similarly asserts that its members "rely on [HIPAA's] protections to help preserve the physician-patient relationship and maintain trust with their patients." *Id.* But

HIPAA rights belong to healthcare patients, not providers. And these general allegations do not show a direct effect on their providers.

At bottom, Proposed Intervenors real interest amounts to ensuring they and their allies can invoke the 2024 Rule as a shield of preemption against law enforcement investigations. That is no basis for intervention. Such an attenuated interest, especially on the sparse facts here, is not a direct or substantial legally protectable interest. *New Orleans Pub. Serv., Inc.,* 732 F.2d at 463.

Proposed Intervenors may submit an amicus brief with their policy position in favor of coercion, but their policy preference is not a legally protected interest requiring intervention. "Even if [Proposed] Intervenors could point to an injury in fact, they would still fall short of showing that the injury is fairly traceable." *Rogers v. 12291 CBW, LLC*, No. 1:19-CV-00266-MJT, 2021 WL 11247562, at *4 (E.D. Tex. Dec. 13, 2021). "In general, an injury is not 'fairly traceable' when 'the intervening, independent act of a third party' is 'a necessary condition of the harm's occurrence.'" *Lane v. City of Houston*, No. 4:23-CV-02302, 2024 WL 4354116, at *2 (S.D. Tex. Sept. 30, 2024) (quoting *Texas v. United States*, 787 F.3d 733, 752 (5th Cir. 2015)). Here, because the necessary condition of Proposed Intervenors' interest in avoiding harm from not disclosing information to a state is that the state will take action against them in the absence of the 2024 Rule, their interest is not traceable to the present litigation but to the state laws they fear.

### 3. Proposed Intervenor's expenditures to comply with the 2024 Rule do not entitle them to intervene to defend it.

Proposed Intervenors claim that they have a stake here because "they expend significant time and money on HIPAA compliance and training." ECF No. 50 at 13–14. For example, DFA "provides resources and trainings, including HIPAA-specific resources, for its members," ECF No. 50 at 18. And Columbus "has already devoted staff time toward implementing the 2024 Rule." ECF No. 50 at 14.

But a judgment in Defendants' favor will not remedy these sunk costs or avoid future costs. Indeed, a judgment in Dr. Purl's favor could allow Proposed Intervenors to *avoid* more compliance costs.

Proposed Intervenors also claim that their past and future costs give them a sufficient stake in the case. ECF No. 50 at 13–14. They point to *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012), to argue that the expenditure of resources "toward implementing the 2024 Rule" constitutes a Rule 24(a) interest because, "[i]f the [Rule] is overturned, their time and money will have been spent in vain." ECF No. 50 at 14 (quoting *Am. Traffic Sols.*, 668 F.3d at 294).

But again, not being required to incur costs is not a threatened impairment to the ability to protect a legally protectable interest. And *American Traffic Solutions* was not about compliance costs. In that case, the City of Houston passed an ordinance permitting the use of red-light cameras and contracted with American Traffic Solutions to operate the system. 668 F.3d at 292. Grass roots organizers managed to amend the city charter to force Houston to stop using the system. *Id.* American Traffic Solutions then sued over its contract, and the organizers of the grass roots campaign sought to intervene. *Id.* at 293. The circuit court noted how "unique" the organizers' circumstances were, and observed that, "[i]f the amendment is overturned, their money and time will have been spent in vain." *Id.* at 294.

Proposed Intervenors' costs are not analogous. They can hardly claim that they are the sole reason for the 2024 Rule's existence or that they spent a personal fortune to bring it into existence. Whatever costs Proposed Intervenors incurred to comply with the 2024 Rule, they are not the costs that gave rise to a close, significant, protectable interest for Rule 24(a) purposes in *American Traffic Solutions*. Were this Court to hold otherwise, compliance costs would always justify intervention in order to *keep* the costs of regulations. That cannot be the law.

Proposed Intervenors next say that "DFA will have to expend significant resources if the 2024 Rule is undone" because they "would be *required* to expend significant resources advocating for increased privacy protections elsewhere (for example, at the state level) and educating and training its members on the reworked legal landscape." ECF No. 50 at 18–19 (emphasis added). But enjoining the 2024 Rule would not "require" DFA to advocate for anything; policy advocacy is a voluntary undertaking. Advocacy groups "have no legally-protected interest in *not* expending their resources on" promoting their policy goals. *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). What DFA alleges here is "simply a setback to [its] abstract social interests." *NAACP v. City of Kyle*, 626 F.3d 233, 239 (5th Cir. 2010) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Such a setback would not give DFA organizational standing, *see id.*, and it does not support intervention either. At bottom, Proposed Intervenors assert at most one covered entity's desire to avoid the costs of changing their policies back to the less-regulated legal landscape of the status quo of a few months ago, a position undercut by their simultaneous wish to keep—and ability to keep—these policies.

Proposed Intervenors do not claim the 2024 Rule interferes with what they wish to do. Indeed, if they wish to apply greater privacy restrictions to reproductive health information than required by HIPAA, HIPAA does not stop them. HIPAA and the Privacy Rule create a "federal floor," meaning "the law that is most protective of privacy [will] control." 65 Fed. Reg. at 82,580.[15] If Proposed

---

[15] *See also* HHS OCR, *Standards for Privacy of Individually Identifiable Health Information* (content last reviewed July 26, 2013), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/standards-privacy-individually-identifiable-health-information/index.html#:~:text=The%20Privacy%20Rule%20establishes%20a,who%20do%20not%20need%20them.

Intervenors' additional privacy protections were to conflict with state law, Proposed Intervenors' issue is with state laws, not with HIPAA.

### C.    Interests identified by Proposed Intervenors have been adequately represented by existing parties.

Existing parties have adequately represented Proposed Intervenors' interests. "'[W]hen the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance.'" *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578–79 (5th Cir. 2007) (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir.1987)). Proposed Intervenors have no support showing the opposite.

### 1.    Proposed Intervenors' objectives overlap with the Defendants' existing written submissions to this Court.

Proposed Intervenors assert interests in the provider-patient relationship and in public health. ECF No. 50 at 14–18. Citing patients' concerns over the use of their sensitive health information, Proposed Intervenors maintain that the risk to the patient-provider relationship "has only increased since the Supreme Courts' decision in *Dobbs*." *Id.* at 15. Their interests mirror the interests HHS asserted in the 2024 Rule itself. *See, e.g.*, 89 Fed. Reg. at 32,985 (emphasis added) ("The prospect of the disclosure of highly sensitive PHI by regulated entities *can result in medical mistrust* and the deterioration of the confidential, safe environment that is necessary to provide high-quality health care, operate a functional health care system, and *improve the public's health generally*."); 89 Fed. Reg. at 32,987 ("Following the Supreme Court's decision [in *Dobbs*], the legal landscape has shifted .... [T]his shift may interfere with the longstanding expectations of individuals ... with respect to the privacy of their PHI."). The Court need not receive another

14

round of briefing that seeks to vindicate the same objectives argued for in Defendants' briefs.

## 2. Proposed Intervenors' concerns that existing Defendants will not defend the 2024 Rule are speculative.

Proposed Intervenors speculate about potential future deficiency in HHS's past arguments or public statements. ECF No. 50 at 22. But thus far, "[n]owhere in [their] motion to intervene [do Proposed Intervenors] allege that [existing Defendants] have acted in any manner indicating 'adversity of interest, collusion, or nonfeasance.'" *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2020 WL 6161495, at *16 (E.D. Tex. Oct. 21, 2020). Nor could they. Proposed Intervenors moved to intervene before the new administration took office.

It is possible, of course, that HHS will recognize that the 2024 Rule is unlawful and cease opposing Dr. Purl's motion for summary judgment. Yet HHS has *already* submitted both summary judgment and preliminary injunction briefing opposing Dr. Purl's relief. This Court fully considered and ruled on HHS's full-throated defense of its 2024 Rule. And the Court may fully consider the arguments from the already-filed summary judgment briefing, as the Court may consider whatever legal arguments it deems necessary so that the Court can fulfill its obligation to ensure that it identifies the correct state of the law. There is no need to admit Proposed Intervenors into the case as defendants to pursue the same objectives, much less to delay the existing briefing schedule. Indeed, even Proposed Intervenors' proposed summary judgment brief does not raise independent arguments in defense of the 2024 Rule. Instead, it refers the Court to Defendants' brief. *See, e.g.*, ECF No. 49-3 at 12, 15.

And even if the Proposed Intervenors could show inadequacy of representation, their failure to satisfy the other factors for intervention as of right warrants denying their motion.

### III.    The Court should deny permissive intervention.

The Court should deny permissive intervention for similar reasons. "Permissive intervention is wholly discretionary and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (cleaned up). Summary judgment briefing is nearly complete. Granting permissive intervention to two municipalities and a progressive advocacy group could introduce duplication and delay. Proposed Intervenors' failure to comply with Rule 24(c) also requires denial of permissive intervention, since paragraph (c) applies to both kinds of intervention. Granting permissive intervention after allowing a cure of that defect would delay the case even further. And the flaw in Proposed Intervenors' motion casts doubt on the quality of the representation they would present in this case.

Finally, if the Court permits Proposed Intervenors into the case, whether as of right or by permission, Dr. Purl respectfully requests that, at most, they be allowed to participate only for the purpose of standing in Defendants' shoes if Defendants choose not to appeal, and to do so without adding to or extending the briefing schedule before this Court. Defendants already presented extensive arguments in defense of the 2024 Rule. Proposed Intervenors should also not be permitted to introduce evidence into the record. This is an Administrative Procedure Act case limited to the administrative record, and vacatur of the 2024 Rule does not involve consideration of additional equitable factors that might sweep in extraneous evidence. In addition, the Court already ruled that Dr. Purl has standing as an object of the regulation, and that ruling should not be relitigated.

### CONCLUSION

The Court should deny the motion to intervene.

Respectfully submitted this 7th day of February, 2025.

*/s/ Natalie D. Thompson*

**Natalie D. Thompson**
TX Bar No. 24088529
DC Bar No. 90026665
Matthew S. Bowman
DC Bar No. 993261
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
nthompson@ADFlegal.org
mbowman@ADFlegal.org

Julie Marie Blake
VA Bar No. 97891
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org

*Counsel for Plaintiffs*