IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| CARMEN PURL, M.D., *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>*Defendants*. | No. 2:24-cv-228-Z |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     Dr. Purl lacks Article III standing ..........................................................................................2

II.    In all events, any relief should be narrowly tailored to redress only Dr. Purl's injuries .............4

    A.     Universal vacatur of the Rule would be improper ................................................4

    B.     Dr. Purl is not entitled to a nationwide permanent injunction .........................9

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022) ................................................................................... 7, 8

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
  781 F.3d 1271 (11th Cir. 2015) ..................................................................................5

*Braidwood Management, Inc. v. Becerra*,
  104 F.4th 930 (5th Cir. 2024) .....................................................................................7

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) ................................................................................... 5, 7

*Cent. & S.W. Servs., Inc. v. EPA*,
  220 F.3d 683 (5th Cir. 2000) .................................................................................. 5, 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................................................2

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) ..................................................................................................10

*FDA v. All. for Hippocratic Medicine*,
  602 U.S. 367 (2024) ............................................................................................... 3, 4

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) .......................................................................................6

*Georgia v. President of the U.S.*,
  46 F.4th 1283 (11th Cir. 2022) ...................................................................................8

*Gill v. Whitford*,
  585 U.S. 48 (2018) ......................................................................................................6

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ....................................................................................................6

*In re Entringer Bakeries, Inc.*,
  548 F.3d 344 (5th Cir. 2008) .......................................................................................7

*John Doe #1 v. Veneman*,
  380 F.3d 807 (5th Cir. 2004) .....................................................................................10

*Knight v. Kirby Offshore Marine Pacific, LLC*,
  983 F.3d 172 (5th Cir. 2020) .......................................................................................7

*Lewis v. Casey*,
  518 U.S. 343 (1996) .............................................................................................................. 10

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) ..................................................................................................... 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................. 2

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ................................................................................................................. 6

*Monsanto Co. v. Geerston Seed Farms*,
  561 U.S. 139 (2010) ............................................................................................................... 10

*Purl v. HHS*,
  2024 WL 5202497 (N.D. Tex. Dec. 22, 2024) ............................................................... 1, 2, 6

*Second Amendment Found., Inc. v. ATF*,
  702 F. Supp. 3d 513 (N.D. Tex. 2023) .................................................................................. 3, 4

*Swann v. Charlotte-Mecklenburg Bd. of Ed.*,
  402 U.S. 1 (1971) ................................................................................................................ 9, 10

*Tenn. Walking Horse Nat'l Celebration Ass'n v. USDA*,
  2025 WL 360895 (N.D. Tex. Jan. 31, 2025) ............................................................................ 9

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
  989 F.3d 368 (5th Cir. 2021) ................................................................................................ 5, 8

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ................................................................................................. 2, 8

*Texas v. United States*,
  126 F.4th 392 (5th Cir. 2025) ............................................................................................... 5, 9

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ................................................................................................................. 6

*United States v. Texas*,
  599 U.S. 670 (2023) .......................................................................................................... 5, 6, 7

*VanDerStok v. Garland*,
  86 F.4th 179 (5th Cir. 2023) ..................................................................................................... 5

*ZeniMax Media Inc. v. Oculus VR LLC*,
  2018 WL 4078586 (N.D. Tex. June 27, 2018) ...................................................................... 10


**Statutes**

5 U.S.C. § 702 ................................................................................................................................. 5

5 U.S.C. § 706 ................................................................................................................................. 5

**Regulations**

45 C.F.R. § 164.512 ........................................................................................................................ 3

45 C.F.R. § 164.535 ........................................................................................................................ 9

HIPAA Privacy Rule To Support Reproductive Health Care Privacy,
  89 Fed. Reg. 32976 (Apr. 26, 2024) ..................................................................................... 1, 3, 9

**INTRODUCTION**

Last year, the Department of Health and Human Services ("HHS") issued a rule that imposed additional restrictions on the use and disclosure of reproductive health information protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), with a compliance date of December 23, 2024. *See HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32976 (Apr. 26, 2024) ("Rule"). The Rule has since been challenged in several cases, including by Dr. Carmen Purl and her walk-in clinic (together, "Dr. Purl"), who filed this Administrative Procedure Act ("APA") suit seeking to vacate the Rule and permanently enjoin it nationwide. *See* Compl., ECF No. 1 (filed Oct. 21, 2024); *see also Texas v. HHS*, No. 5:24-cv-204 (N.D. Tex.) (filed Sept. 4, 2024); *Tennessee v. HHS*, No. 3:25-cv-25 (E.D. Tenn.) (filed Jan. 17, 2025); *Missouri v. HHS*, No. 4:25-cv-77 (E.D. Mo.) (filed Jan. 17, 2025). In late December, this Court preliminarily enjoined enforcement of the Rule against Dr. Purl alone. *Purl v. HHS*, 2024 WL 5202497 (N.D. Tex. Dec. 22, 2024). This case then proceeded to summary judgment on an expedited basis, and the parties filed their opening briefs simultaneously on January 17, 2025. *See* Defs.' Br. in Supp. of MTD or, in the Alternative, for Summ. J. ("Defs.' Br."), ECF No. 40; Pls.' Br. in Supp. of Mot. for Summ. J. ("Pls.' Br."), ECF No. 45.

As Defendants previously indicated, *see* ECF No. 62, HHS's new leadership is currently reviewing the Rule, so Defendants do not further address the merits here. But the Court need not address the merits because, as Defendants' opening brief explains, Dr. Purl's challenge suffers from a threshold jurisdictional defect: She has failed to introduce evidence showing that she is actually suffering the harms she alleges—a burden that is heightened at summary judgment. She thus lacks Article III standing to maintain this lawsuit. If the Court nevertheless proceeds to resolve the pending summary-judgment motions, however, and concludes that any of Dr. Purl's claims have merit, it should limit any relief to her alone, as it did when entering its preliminary injunction.

1

# ARGUMENT

## I. Dr. Purl lacks Article III standing.

As Defendants' opening brief explains, *see* Defs.' Br. 12–16, Dr. Purl rests her claim of Article III standing on unrealistic and unsubstantiated theories of harm. Indeed, her opening brief devotes barely a page to the contested issue of standing, *see* Pls.' Br. 18–19, regurgitating the same threadbare arguments she made at the preliminary-injunction stage, *see* Pls.' Mot. for Prelim. Inj. & Br. in Supp. ("PI Mot.") at 12–13, 21–22, ECF No. 24. Dr. Purl's mere assertions of harm are not enough to establish standing at this stage of litigation, however. *See Texas v. United States*, 50 F.4th 498, 513–14 (5th Cir. 2022) ("At summary judgment," a plaintiff "can no longer rest on mere allegations …." (alterations adopted)). Rather, she now must support her standing theories with actual, credible evidence that the Rule she seeks to dismantle will cause her a "certainly impending" injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–63 (1992). But Dr. Purl has left the record empty of any such evidence, and thus has not established for purposes of summary judgment that she has standing to challenge the Rule.

Start with what appears to be Dr. Purl's principal theory of standing—*i.e.*, that the Rule "restricts" her ability to report suspected child abuse to state authorities. *See* Pls.' Br. 18; *see also* PI Mot. 12, 21–22. As already explained, *see* Defs.' Br. 12–13, those "restrictions" are imaginary, as that is simply not how the Rule works. The 2000 Privacy Rule allows covered entities to make disclosures about "child abuse or neglect" to proper authorities, including when suspected abuse involves reproductive health care. *See* 45 C.F.R. § 164.512(b)(1). And the Rule does nothing to change that. *See* Defs.' Br. at 12–13. Rather, the Rule simply clarifies that a covered entity may not disclose protected health information "as part of a report of suspected child abuse based *solely* on the fact that a parent seeks reproductive health care (*e.g.*, treatment for a sexually transmitted infection) for a child." 89 Fed. Reg. at 33004 (emphasis added). It is thus unsurprising that the Court did not endorse this theory of

standing at the preliminary-injunction stage. At any rate, even if this Court were to accept Dr. Purl's portrayal of the Rule, she never even alleges, much less provides evidence of, any situation in which the Rule, had it been in effect, would have ever restricted her ability to report suspected child abuse, or that it is likely to do so in the future. *See* Pls.' Br. 18–19. Her fight with the Rule is thus an abstract one—hardly the basis for Article III standing. *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 381 (2024) ("An injury in fact … must be real and not abstract."). And it's no wonder that Dr. Purl does not try to show that the Rule will, in fact, impede her reporting of real instances of suspected child abuse, given that she does not claim to have ever, in her decades of medical practice, reported such abuse based solely on the fact that a patient sought reproductive health care. *See* Defs.' Br. 13–14.

As a fallback, Dr. Purl claims that complying with the Rule will have its costs. But merely invoking "compliance costs" is not enough. While Dr. Purl offers conclusory "estimates" of what it will cost her to train her staff on the Rule's requirements, she never explains what those estimates are based upon. *See, e.g.*, *Second Amendment Found., Inc. v. ATF*, 702 F. Supp. 3d 513, 539–41 (N.D. Tex. 2023) (finding plaintiffs' declarations "conclusory" as to alleged "compliance costs," "and therefore insufficient to establish a concrete, imminent harm"). Nor does she explain what training costs, if any, are necessary and directly attributable to the Rule, as opposed to the routine costs of training her staff to comply with HIPAA's requirements generally. *See* 89 Fed. Reg. at 33052 ("[M]ost covered entities will be able to incorporate changes to their workforce training into existing HIPAA training programs rather than conduct a separate training …."). Without this information, there is no way for this Court to determine whether the Rule itself will cause Dr. Purl to incur any additional costs, *see All. for Hippocratic Medicine*, 602 U.S. at 382, or whether any such costs that she will incur will be more than *de minimis*, *see Second Amendment Found.*, 702 F. Supp. 3d at 540–42 (rejecting plaintiffs' reliance on alleged compliance costs because, *inter alia*, the court could not determine whether those costs were "more than *de minimis*" given the lack of specific evidence in the record). Nor does Dr. Purl's reliance on the

3

Rule's general cost estimates for all covered entities suffice to show that *she* will, in fact, suffer a "*particularized*" injury. *See All. for Hippocratic Medicine*, 602 U.S. at 381 (emphasis added). Indeed, because Dr. Purl operates a very small medical clinic, it is doubtful that the Rule's general estimates reflect her situation, particularly in light of her failure to provide any information about how she currently trains staff to ensure HIPAA compliance generally.

All told, Dr. Purl has left the record bereft of evidence upon which this Court can meaningfully evaluate whether she has Article III standing to challenge the Rule, and therefore whether this Court has subject-matter jurisdiction. Dr. Purl has thus presented the Court with "only a general legal, moral, ideological, or policy objection" to the Rule, divorced from any real-world consequences—precisely what Article III is meant to "screen[] out." *See id.*

## II. In all events, any relief should be narrowly tailored to redress only Dr. Purl's injuries.

Even if this Court had jurisdiction and Dr. Purl were successful on one or more of her claims, the sweeping remedies she requests are unjustified and contrary to the constitutional and equitable constraints on this Court's remedial authority.

### A. Universal vacatur of the Rule would be improper.

Dr. Purl begins by asking the Court to vacate the Rule "entirely," rather than limit any relief to the parties before the Court or the provisions she has demonstrated to be unlawful. *See* Pls.' Br. 39. The Court should decline that invitation for several reasons.

*First*, Dr. Purl is mistaken that universal vacatur is *required* to remedy an APA violation. *See id.* Although Fifth Circuit precedent recognizes vacatur as an available remedy for a successful APA challenge,[1] it is an equitable one that is neither automatic nor compelled upon finding an APA

---

[1] Still, the APA does not mention vacatur. And there is little indication that Congress intended to create a new and radically different remedy in the form of universal vacatur by directing courts to "set aside" agency "action, findings, and conclusions," 5 U.S.C. § 706(2), as Plaintiffs' arguments

4

violation. *See, e.g.*, *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023); *VanDerStok v. Garland*, 86 F.4th 179, 196–97 (5th Cir. 2023); *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 383, 389–90 (5th Cir. 2021); *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000); *see also* 5 U.S.C. § 702(1) (clarifying that "nothing" in the APA affects "the power or duty" of a court to "deny relief on" any "equitable ground"). In *Cargill*, for example, the Fifth Circuit held that a rule violated the APA. But rather than reflexively vacate the rule—as one would expect if vacatur were the mandatory remedy for an APA violation—the court recognized that "a more limited remedy" than vacatur may be "appropriate," and instructed the district court on remand to determine the proper remedy, whether "injunctive, declarative, or otherwise." 57 F.4th at 472. So contrary to Dr. Purl's argument, it is entirely appropriate for a court not to vacate agency action at all where more limited remedies would fully redress a plaintiff's asserted injuries.

*Second*, Dr. Purl also is incorrect that vacatur is necessarily "universal in scope." *See* Pls. Br. 40 (citation omitted). Indeed, in recently vacating parts of a rule that implemented the Deferred Action for Childhood Arrivals program, the Fifth Circuit "limit[ed] … the effectiveness of the vacatur" to the State of Texas, the only party that had demonstrated an actual injury. *See Texas v. United States*, 126 F.4th 392, 420–22 (5th Cir. 2025). Therefore, vacatur, like all equitable remedies,[2] may properly be tailored to redress only a plaintiff's particular injuries. *See, e.g.*, *Cargill*, 57 F.4th at 472 (explaining that any remedy in an APA case must be narrowly tailored).

*Third*, where (as here) party-specific remedies are capable of providing plaintiffs with complete relief, any broader relief would contradict constitutional and equitable limitations on this Court's

---

suggest. *See United States v. Texas*, 599 U.S. 670, 693–703 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment).

[2] *See, e.g.*, *Texas*, 599 U.S. at 702 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment) (explaining that, if there is a power to vacate agency action under § 706, it is an "equitable power"); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) ("Undeniably, vacatur [of agency action] is 'equitable relief.'" (citation omitted)).

5

remedial authority. Because this Court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," any "remedy must be tailored to redress" Dr. Purl's "particular injury." *Gill v. Whitford*, 585 U.S. 48, 72–73 (2018); *accord Texas*, 599 U.S. at 702 (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment) ("*Any remedy* . . . must not be more burdensome to the defendant than necessary to redress the complaining parties." (cleaned up with emphasis added)). Traditional principles of equity reinforce that constitutional limitation, *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999), instructing that a remedy "be no more burdensome" to defendants "than necessary to provide complete relief" to plaintiffs, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted); *accord Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring) (explaining that English and early American "courts of equity" typically "did not provide relief beyond the parties to the case").

Dr. Purl's request for universal vacatur disregards these well-established principles, as she attempts no showing that such sweeping relief is necessary to fully redress her asserted injuries. *See Feds for Med. Freedom v. Biden*, 63 F.4th 366, 389 (5th Cir. 2023) ("[At the merits stage], the plaintiffs will have to *prove* that whatever [relief] they request is broad enough to protect against their proven injuries and no broader."). And at any rate, that claim is at odds with this Court's decision at the preliminary-injunction stage, which recognized that a party-specific remedy fully redressed any harm. *See Purl*, 2024 WL 5202497, at *11. Dr. Purl does not suggest that this Court's preliminary injunction has not adequately protected her, nor does she offer any sound reason why broader relief is necessary at final judgment. She has thus fallen well short of showing an entitlement to universal vacatur.[3]

---

[3] While Dr. Purl maintains that she is entitled to universal vacatur as long as she shows that the Rule is unlawful in some respect, *see* Pls.' Br. 39, her reliance on *Braidwood Management, Inc. v. Becerra*, 104 F.4th 930 (5th Cir. 2024), for that proposition is misplaced. Nowhere did that case purport to strip courts of their authority to enter a party-specific injunction, for example, in lieu of vacatur to redress an APA violation—authority that the Fifth Circuit expressly recognized in *Cargill*, *see* 57 F.4th at 472, and that permits a court to tailor a remedy consistent with constitutional and equitable

*Fourth*, universal vacatur of the Rule would trench on the review of other plaintiffs' challenges to the Rule that are pending in other courts. *See Texas v. HHS*, 5:24-cv-204 (N.D. Tex.); *Tennessee v. HHS*, No. 3:25-cv-25 (E.D. Tenn.); *Missouri v. HHS*, No. 4:25-cv-77 (E.D. Mo.). Granting such a remedy in this case would thus not only contravene traditional limitations on this Court's remedial authority, but would also undermine basic principles of comity by providing other plaintiffs not before this Court with the very relief they are seeking from sister courts, regardless of whether those courts— including another within this District—believe those plaintiffs are entitled to any relief. *See, e.g., Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) ("[Where] [o]ther courts are considering [the] same issues" at the same time, "[p]rinciples of judicial restraint control" and counsel against universal remedies.); *Texas*, 599 U.S. at 702–03 (Gorsuch, J., concurring in the judgment) (recounting the well-known systemic issues created by universal remedies that courts should, at the very least, "carefully consider … before granting such sweeping relief," including that "vacatur can stymie the orderly [judicial] review of important questions." (cleaned up)); *cf. Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) ("[Universal remedies] short-circuit the decisionmaking benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top."); *accord Georgia v. President of the U.S.*, 46 F.4th 1283, 1305 (11th Cir. 2022).

*Fifth*, Dr. Purl's argument ignores that some APA violations should be corrected by an equitable remedy that the Fifth Circuit has described as "remand without vacatur." *See, e.g., Texas v.*

---

principles. At any rate, *Braidwood* cannot be read to overrule *Cargill* or other prior Fifth Circuit precedent recognizing that remedial authority, *see In re Entringer Bakeries, Inc.*, 548 F.3d 344, 348–49 (5th Cir. 2008) (noting that a "panel cannot overrule a prior panel's decision" absent "an intervening contrary or superseding decision" by the Fifth Circuit sitting en banc or by the Supreme Court), particularly given that *Braidwood* is not an APA case, and thus its discussion of APA principles relating to vacatur is non-binding *dictum*, *see Knight v. Kirby Offshore Marine Pacific, LLC*, 983 F.3d 172, 177 (5th Cir. 2020) (explaining that a statement in a prior opinion was "*dictum* and, concomitantly, not binding precedent" because it "was unnecessary for deciding the issue before the court").

*United States*, 50 F.4th 498, 529 (5th Cir. 2022). Such relief is "generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so" and where vacatur would be "disruptive." *See id.* (citation omitted). For example, if this Court were to find that HHS did not consider an issue or adequately explain its actions, that would at most justify an instruction to the agency to cure the asserted failure without granting additional relief. *See, e.g.*, *Tex. Ass'n of Mfrs.*, 989 F.3d at 383, 389–90 (remanding without vacatur to allow consideration of an issue that the agency failed to address); *Cent. & S.W. Servs.*, 220 F.3d at 692, 702 (remanding without vacatur to allow the agency to explain its actions, and holding that "failure to explain [an action] does not require vacatur"). That approach, moreover, would avoid unnecessarily disrupting covered entities that may wish to continue operating under the Rule or that may have simply modified their policies or practices to comply with the Rule and would have to unwind those changes if the Rule were vacated. *See, e.g.*, *Cent. & S.W. Servs.*, 220 F.3d at 692 (declining to vacate a rule because "it would be disruptive" to "the regulated community").

*Finally*, Dr. Purl's invitation for this Court to universally vacate the Rule "*entirely*," *see* Pls. Br. at 39–40 (emphasis added), disregards the availability of other less burdensome remedies. As an initial matter, the fact that Dr. Purl's alleged injuries center on a particular context—*i.e.*, where the Rule allegedly conflicts with state-law reporting requirements—suggests that injunctive relief, as opposed to vacatur, would be a more appropriate remedy in this case, given that such relief could be tailored to prevent the Rule's application only in the context that gives rise to Dr. Purl's injuries.

But even if this Court were to find that vacatur is an appropriate remedy, vacating the Rule in its entirety (as Dr. Purl requests) would ignore well-established severability principles. As this Court recently explained, whether a rule is severable depends upon the agency's intent and whether the remainder of the rule "could function sensibly without the stricken provisions." *See Tenn. Walking Horse Nat'l Celebration Ass'n v. USDA*, 2025 WL 360895, at *13 (N.D. Tex. Jan. 31, 2025) (Kacsmaryk,

8

J.) (alteration adopted) (quoting *Texas*, 126 F.4th at 419). While Dr. Purl does not acknowledge it, the Rule contains a severability clause communicating HHS's intent that any provisions held to be facially invalid or unenforceable "shall be severable … and shall not affect the remainder" of the Rule. *See* 45 C.F.R. § 164.535; *see also* 89 Fed. Reg. at 33048. Severability clauses like this should be "adhere[d] to" absent "extraordinary circumstances," of which there are none here. *See Texas*, 126 F.4th at 419 (citation omitted). Nor does Dr. Purl explain why the entire Rule must fall if any of her claims were successful. For instance, Dr. Purl identifies a handful of provisions that she contends impose unlawful limits on child-abuse reporting, *see* Pls.' Br. 20–23, but she makes no showing that the Rule's other provisions "could not function sensibly" were this Court to vacate the provisions Dr. Purl challenges, *see Tenn. Walking*, 2025 WL 360895, at *13. Take, as just one example, the Rule's provisions that modified the Notice of Privacy Practices regulations, *see* 45 C.F.R. § 164.520, to implement, in part, changes required by Section 3221(i) of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 (Mar. 27, 2020), and proposed in a notice of proposed rulemaking regarding substance use disorder records, *see* 87 Fed. Reg. 74216 (Dec. 2, 2022). *See* 89 Fed. Reg. 33045–33048. Dr. Purl does not challenge those provisions, but she nevertheless invites the Court to vacate them, along with all others, without any showing that they cannot function independently.

\*   \*   \*

In sum, Dr. Purl has offered no persuasive reason why this Court should universally vacate the Rule in its entirety. The Court should therefore, at a minimum, decline to enter universal vacatur.

**B.    Dr. Purl is not entitled to a nationwide permanent injunction.**

As an alternative to universal vacatur, Dr. Purl requests a permanent injunction preventing Defendants from enforcing any part of the Rule "against anyone" anywhere. *See* Pls.' Br. 41. But Dr. Purl has failed to justify such a needlessly broad injunction.

First of all, preventing enforcement of the entire Rule nationwide would be an ill-fitting remedy for the particular claims that Dr. Purl asserts. The propriety and form of an equitable remedy are determined by "the nature of the violation" established. *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971); *accord Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must . . . be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). Although Dr. Purl's claims focus on how the Rule allegedly restricts the reporting of child abuse under Texas law, she requests an injunction that would prevent enforcement of the Rule in contexts completely unrelated to child-abuse reporting. In other words, Dr. Purl's proposed injunction would preclude applications of the Rule that she does not allege are unlawful, contrary to well-established equitable principles. *See, e.g.*, *John Doe #1 v. Veneman*, 380 F.3d 807, 819 (5th Cir. 2004) ("[A]n injunction is necessarily overbroad" where "it exceeds the extent of the violation established.").

In any event, Dr. Purl has not satisfied the equitable factors necessary to obtain the permanent injunction she seeks. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) ("[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."). To justify her proposed injunction, Dr. Purl needed to make a clear showing that (i) she will suffer irreparable harm without the injunction, (ii) other available remedies are inadequate, (iii) the balance of equities tips in her favor, and (iv) the injunction would serve the public interest. *See Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156–67 (2010); *see also ZeniMax Media Inc. v. Oculus VR LLC*, 2018 WL 4078586, at *1 (N.D. Tex. June 27, 2018) ("Failure to sufficiently establish any one of the four factors requires" denial of a "request for an injunction." (citation omitted)). But even setting aside Dr. Purl's failure to demonstrate that she will suffer any actual injury because of the Rule, *see supra* 2–4, she has not attempted to show that the sweeping injunction she seeks is necessary to redress her and her Dumas-based walk-in clinic's alleged injuries, let alone that it would be in the public interest to enjoin

10

Defendants from enforcing any part of the Rule under any circumstances against anyone anywhere. Any injunction should therefore be tailored to redress only Dr. Purl's actual injuries.

## CONCLUSION

For these reasons, the Court should deny Dr. Purl's motion for summary judgment for lack of Article III standing. But in the event the Court grants summary judgment in favor of Dr. Purl on any of her claims, it should narrowly tailor any relief to redress only her actual injuries.

Dated: March 3, 2025	Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On March 3, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice