IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CARMEN PURL, *et al.*,

    Plaintiffs,

v.

2:24-CV-228-Z

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is the City of Columbus, Ohio, the City of Madison, Wisconsin, and Doctors for America's ("Proposed Intervenors") Motion to Intervene ("Motion") (ECF No. 49), filed January 17, 2025. Plaintiffs and Defendants responded to the Motion on February 7, 2025. ECF Nos. 61, 62. Proposed Intervenors replied on March 17, 2025. ECF No. 94. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Court **DENIES** the Motion.

### BACKGROUND

Plaintiffs challenge the HIPAA Privacy Rule to Support Reproductive Health Care Privacy ("2024 Rule"). 89 Fed. Reg. 32976 (Apr. 26, 2024) (codified at 45 C.F.R. pts. 160, 164). The 2024 Rule responded to the "changing legal landscape" following *Dobbs v. Jackson Women's Health Organization.* 597 U.S. 215 (2022). In Defendants' view, *Dobbs* had "far-reaching implications for reproductive health care" that "increase[d] the likelihood that an individual's [sensitive healthcare information] may be disclosed in ways that cause harm to the interests that HIPAA seeks to protect." 89 Fed. Reg. at 32978. So the 2024 Rule "amends provisions of the [HIPAA] Privacy Rule to strengthen privacy protections for highly sensitive [healthcare information] about the reproductive health care of an individual." *Id.*

Plaintiffs sought preliminary injunctive relief. They feared the 2024 Rule would impair the ability to fulfill state-mandated obligations to report "child abuse" or to participate in "public health investigations." ECF No. 24 at 19; TEX. FAM. CODE § 261.101(a). This Court preliminarily enjoined the 2024 Rule as to Plaintiffs. ECF No. 34. And it ordered expedited summary judgment briefing. *Id.* Both parties filed summary judgment on January 17, 2025. ECF Nos. 39, 44. The Proposed Intervenors moved to intervene on the same date. ECF No. 49. Both Plaintiffs and Defendants oppose intervention. ECF Nos. 61, 62.

### LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) governs intervention as of right. It requires a prospective intervenor to either have a right to intervene that a statute grants or meet all four requirements of Rule 24. Those requirements are: (1) the application must be timely; (2) the applicant must have an interest relating to the case's subject; (3) the applicant's "ability to protect [its] interest" must be "impair[ed] or impede[d]" by the case's disposition; and (4) the case's existing parties must be inadequate to represent the applicant's interest. FED. R. CIV. P. 24(a)(2). *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). The movant bears the burden for all factors. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). Failure to carry that burden for even one factor requires the Court to deny intervention by right. *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007) ("Failure to satisfy any one requirement precludes intervention of right.").

Federal Rule of Civil Procedure 24(b) governs permissive intervention. It allows a court to "permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). Permissive intervention is "wholly discretionary with the [district] court." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d

1285, 1289 (5th Cir. 1987) (alteration in original) (quoting *New Orleans Public Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (en banc)). This is true "even though there is a common question of law or fact, or the requirements of 24(b) are otherwise satisfied." *Id.* When exercising its extensive discretion, a court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention is appropriate, but not required, when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 934 (N.D. Tex. 2019) (quoting *Frazier v. Wireline Sols., LLC*, No. C-10-3, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010)).

ANALYSIS

## I. Proposed Intervenors Are Not Entitled to Mandatory Intervention

To intervene as of right, a movant must satisfy four factors: timeliness, a protectable interest, the potential impairment of that interest, and that the current parties are inadequate to represent that interest. *See La Union del Pueblo Entero*, 29 F.4th at 305. Proposed Intervenors fail to demonstrate a protectable interest and the inadequacy of current parties. The Court need not address the remaining factors—a movant must satisfy all four factors to prevail.

### A. Proposed Intervenors Lack a Legally Protectable Interest

To intervene by right, a movant must demonstrate a legally protectable interest that is "direct [and] substantial." *Texas v. United States*, 805 F.3d at 657 (quoting *Edwards v. City of Hous.*, 78 F.4th 983, 1004 (5th Cir. 1996)). Of course, that is vague. So the Fifth Circuit has clarified that the "inquiry turns on whether the intervenor has a stake in the matter that

goes beyond a generalized preference that the case come out a certain way." *Id.* A movant fails to demonstrate more than a "generalized preference" if its interest turns on "ideological, economic, or precedential" reasons alone. *La Union del Pueblo Entero*, 29 F.4th at 305. Intervention is not an appropriate way to advocate. "[M]erely prefer[ring] one outcome to the other" will not clear the bar. *Texas v. United States*, 805 F.3d at 657. But intervention is appropriate if the movant shows an "interest that is concrete, personalized, and legally protectable." *Id.* at 658. *Texas v. United States* provides an example. There, the intervenors were personally subject to deportation depending on the case's outcome. *Id.* at 660. They demonstrated that their interest was concrete, personalized, "specific[,] and 'unique.'" *Id.* at 659 (quoting *City of Hous. v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012)). Far from providing a "mere generalized" interest in implementing a federal program, they were "the intended beneficiaries of the challenged federal policy." *Id.* at 660.

Movants show sufficient personalized interest if they are "the intended beneficiaries of the program being challenged." *Id.* at 661. If a challenged program or regulation does nothing more than regulate movants, movants show nothing more than a generalized interest. That is why courts seek more. For example, in *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, Wal-Mart challenged a regulatory system it argued existed "for the benefit" of the intervenors. 834 F.3d 562, 564 (5th Cir. 2016). The Fifth Circuit held intervenors had a "legally protectable interest in the [challenged] regulatory scheme because . . . [it] is the scheme's beneficiary." *Id.* at 566. *Wal-Mart* also underscored the same beneficiary analysis in *Texas v. United States. Id.* at 567 ("We permitted the intervention [in *Texas v. United States*] because the women were the 'intended beneficiaries' of the policy under challenge." (quoting *Texas v. United States*, 805 F.3d at 660)).

Here, Proposed Intervenors fail to demonstrate more than a generalized interest.[1] They first contend they have sufficient interest because the 2024 Rule regulates them. ECF No. 50 at 13–14. Not so. They cite *Wal-Mart* as support. *Id.* But as shown, the Fifth Circuit held sufficient interest existed in *Wal-Mart* only because the intervenor was "the intended beneficiary of a government regulatory system." *Wal-Mart*, 834 F.3d at 569. If being regulated alone sufficed, the Fifth Circuit would not have needed to analyze whether the interest prong was met. It would have been an open-and-shut inquiry. But Proposed Intervenors do not demonstrate they are the beneficiaries of the 2024 Rule. The 2024 Rule benefits those whose information it protects. It is not designed to benefit healthcare providers. Instead, it instructs them to keep specified information confidential so *patients* benefit. Proposed Intervenors contend they are beneficiaries of the 2024 Rule because it improves their provision of care. ECF No. 65 at 5–6. If true, that underscores that patients are the beneficiaries. Patients benefit from healthcare providers offering better care. Defendants did not promulgate the 2024 Rule so that healthcare providers could be better. They promulgated it to, in their view, protect *patients'* sensitive information.

Nor does Proposed Intervenors' argument that their compliance costs "will have been spent in vain" prevail. ECF No. 50 at 14 (quoting *City of Hous.*, 668 F.3d at 294). In *City of Houston*, the simple fact intervenors expended time and money was not enough. Rather, the intervenors, as Proposed Intervenors acknowledge, were the "architects of a successful campaign to change a city's charter." ECF No. 50 at 14. The Fifth Circuit held they had an interest because they were "unique" as "they engineered the drive" that led to the city charter change. *City of Hous.*, 668 F.3d at 294. They did not spend money alone. Instead, they

---

[1] Proposed Intervenors have a long history of advocacy in this realm that "does not diminish the [analysis] of Plaintiffs' asserted interests." ECF No. 65 at 4. But it does shade their motivation to seek intervention. ECF No. 61 at 10–12 (outlining some of Proposed Intervenors' alarmism and advocacy for abortion that even extended to flouting state law).

"demonstrated a *particular* interest in cementing their electoral victory." *Id.* Instead of capaciously holding that anyone who has spent "money and time" has an interest, *City of Houston* admonishes that a "court must be circumspect about allowing intervention of right by [the] public-spirited." *Id.* Proposed Intervenors fail to demonstrate that they hold an interest akin to that of the intervenors in *City of Houston.* Unlike the intervenors in *City of Houston,* Proposed Intervenors offer nothing to claim they were instrumental in the 2024 Rule's promulgation such that they have a "specific and 'unique' interest." *Texas v. United States,* 805 F.3d at 659 (quoting *City of Hous.,* 668 F.3d at 294).

None of Proposed Intervenors' remaining offered interests are particular to them. They claim an interest in protecting the provider-patient relationship. ECF No. 50 at 14–17. That interest is common to all those HIPAA and the 2024 Rule regulate. It is not personalized nor particular to Proposed Intervenors. Rather, it exemplifies an interest that is "general[]" to all those regulated. *Texas v. United States,* 805 F.3d at 660. Similarly, Proposed Intervenors fail to clarify how their interest in "public health" is not common to every other municipality or local government in the country. ECF No. 50 at 17–18.

Finally, Proposed Intervenors offer that they will have to "expend significant resources if the 2024 Rule is undone." *Id.* at 18. Specifically, Doctors for America ("DFA") argues that it "spends significant resources advocating on behalf of providers for accessible, equitable health care." ECF No. 50 at 18. If the 2024 Rule were to fall, it claims it "would be required to expend significant resources advocating for increased privacy protections elsewhere . . . and educating and training its members on the reworked legal landscape." *Id.* at 18–19. Proposed Intervenors offer *La Union del Pueblo Entero v. Abbott* to support their claim that "expend[ing] significant resources" on something related to the case is enough to have an interest. 29 F.4th 299, 306 (5th Cir. 2022).

*La Union del Pueblo Entero* does support such a sweeping view of interest. In *La Union*, the Fifth Circuit held that committees associated with the Republican Party had an interest in defending challenged legislation that changed Texas "voter registration, voting by mail, poll watchers, and more." 29 F.4th at 304. The committees had sufficient interest to intervene because they recruited and trained volunteers and poll watchers—and because the legislation "unquestionably regulates the conduct of the Committees' volunteers and poll watchers." *Id.* at 306. The legislation "change[d] the legal landscape for what it takes to carry out [the committees'] duty." *Id.*

*La Union* even points to *Texas v. United States*'s analysis of a Sixth Circuit case. *Id.* (citing *Texas v. United States*, 805 F.3d at 658). *Texas* used *Northland Family Planning Clinic, Inc. v. Cox* to help describe a too-generalized interest. 487 F.3d 323, 343 (6th Cir. 2007). In *Northland*, the Sixth Circuit "determined that an advocacy organization opposing abortion was not entitled to intervene in an action" challenging a statute "because the organization had 'only an ideological interest in the litigation, and the lawsuit does not involve the regulation of [the organization's] conduct in any respect.'" *Texas v. United States*, 805 F.3d at 658 (alteration in original) (quoting *Northland*, 487 F.3d at 343).

The same is true here. DFA admits it engages in "advoca[cy]." ECF No. 50 at 18, 19. And it trains its members on the "legal landscape" surrounding HIPAA. *Id.* at 19. But its interest is not nearly as close as the committees' interest in *La Union*. There, the Fifth Circuit held the challenged legislation directly regulated the committees. Not so here. The 2024 Rule does not directly regulate DFA. Instead, DFA is more akin to the organization in *Northland*. It certainly has an "ideological interest in the litigation" and would likely act if the 2024 Rule were to fall. *Northland*, 487 F.3d at 343. But the 2024 Rule does not directly regulate DFA or its conduct. DFA may, and should, voluntarily respond to changes in the "legal landscape."

ECF No. 50 at 19. But nothing in the 2024 Rule mandates or prohibits DFA's advocacy. An interest need not rise to standing's high bar. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) ("[T]here is no Article II requirement that intervenors have standing in a *pending* case."). Nevertheless, in examining whether a simple interest exists, courts recognize organizations "have no legally-protected *interest* in *not* expending their resources on behalf of individuals for whom they are advocates." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (emphasis added) (second emphasis in original); *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (expending funds on "public advocacy and public education" to "gather information and advocate [for] the defendant's action" was insufficient to demonstrate injury).

Proposed Intervenors have *an* interest in the outcome of this litigation. But it is not sufficiently direct, specific, unique, or personalized to be an intervention-by-right interest. The Court recognizes the closeness of the inquiry. Yet without "*something more*," the interests of these two municipalities and one medical advocacy organization evince they "merely *prefer*[] one outcome to the other." *Texas v. United States*, 805 F.3d at 657 & n.3 (quoting *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995)); *id.* at 657 n.3 (citing *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) ("It is settled . . . than an *undifferentiated*, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." (emphasis added))). That is not enough to intervene by right.

### B. Proposed Intervenors Fail to Demonstrate Current Parties' Representation Is Inadequate

Assuming a movant demonstrates a satisfied interest, a movant must also establish that existing parties inadequately represent that interest. *Texas v. United States*, 805 F.3d

8

at 661; *Edwards*, 78 F.3d at 1005 ("The burden of establishing inadequate representation is on the [movant] for intervention."). Though Proposed Intervenors, as shown, do not satisfy the interest factor, the Court nonetheless addresses this next factor. The inadequate-representation factor "is satisfied if the [movant] shows that the representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). A movant's burden is typically "minimal." *Edwards*, 78 F.3d at 1005. But it is less minimal when two different presumptions apply "in appropriate cases." *Texas v. United States*, 805 F.3d at 661. The "requirement must have some teeth." *Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014).

The first presumption applies if "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. If this first presumption applies, then the movant "must show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* Adversity of interest exists if the movant's interests "diverge from the putative representative's interests in a manner germane to the case." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d at 662). Despite Proposed Intervenors' assertion, a "mere possibility that a party *may* at some future time" fail to represent a movant's interest "cannot alone show inadequate representation." *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984) (emphasis in original).

The second presumption applies if "the putative representative is a governmental body or officer charged by law with representing the interests of the [putative intervenor]." *Id.* If this second presumption applies, then the movant must show "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Id.* (alterations in original) (internal quotations omitted). A movant may overcome this presumption "by showing that the intervenor's 'interest is in fact different from that of

9

the' governmental party 'and that the interest will not be represented by' the existing governmental party." *Louisiana v. Burgum*, 132 F.4th 918, slip op. at 6–7 (5th Cir. 2025) (quoting *La Union*, 29 F.4th at 308).

*Louisiana v. Burgum* governs the analysis for this factor. In *Burgum*, an oil industry group sought intervention to defend a Bureau of Ocean Energy Management ("BOEM") administrative rule. *Burgum*, slip op. at 2–4. The group argued that BOEM was inadequate to represent its interest because it "represents the public interests of a federal government agency, but not the specific, private interests of [the group] and its members. *Id.* slip. op. at 7. Critically, the Secretary of the Interior ordered the administrative rule be "suspend[ed], revise[d], or rescind[ed]." *Id.* slip op. at 4. But the Fifth Circuit held that the group failed to overcome the first presumption because it "did not discuss any action taken by BOEM that is adverse to its own interest." *Id.* slip op. at 8. All it showed was "'the mere possibility that [BOEM] *may* at some future time' diverge, [so] it [did] not rebut the first presumption of adequate representation." *Id.* (first alteration in original) (emphasis in original) (quoting *Bush*, 740 F.2d at 358).

Proposed Intervenors fail to overcome the first presumption here. Defendants have the same objective as the Proposed Intervenors: uphold the 2024 Rule. *See, e.g.*, ECF No. 40. That means the first presumption applies. To overcome that presumption, Proposed Intervenors must show "adversity of interest, collusion, or nonfeasance on the part of" Defendants. *La Union*, 29 F.4th at 308 (internal quotation omitted). Proposed Intervenors claim there is adversity of interest between them and Defendants. ECF No. 50 at 21. Just like the group in *Louisiana v. Burgum*, Proposed Intervenors claim the government's interests "are both broader and distinct." *Id.*; ECF No. 65 at 8–9. They argue that the change in presidential administration raises the possibility that the 2024 Rule will no longer be

10

adequately defended. *Id.* at 22–23; ECF No. 65 at 8 ("[T]he government has acknowledged that it is less than certain it will defend the challenged Rule."). But they point to nothing conclusive enough to overcome the presumption. They claim that Robert F. Kennedy, Jr. has "indicated" willingness to rescind "regulations related to reproductive health care." *Id.* at 22. And "key figures" involved with the dreaded Project 2025 "have opposed similar HHS efforts to protect reproductive health information." *Id.* at 22–23 (citing THE HERITAGE FOUNDATION, MANDATE FOR LEADERSHIP: THE CONSERVATIVE PROMISE (2023), https://static.project2025. org/2025_MandateForLeadership_FULL.pdf [https://perma.cc/M9SR-QH9Q]) Finally, they note that the administration has rescinded a Biden-administration executive order that directed HHS to protect reproductive healthcare information. ECF No. 65 at 8.

These allegations only show "the mere possibility that [HHS] *may* at some future time" change its approach. *Burgum*, slip op. at 8 (internal quotation omitted). That is not enough to "rebut the first presumption of adequate representation." *Id. Burgum* shows why. In *Burgum*, the agency had declared its intent to rescind the rule the group sought to defend. *Id.* slip op. at 4. That intent was *still* insufficient because it "ha[d] not yet happened." *Id.* slip op. at 8. And like the group in *Burgum*, Proposed Intervenors admit they "cannot say for sure that . . . [Defendants' potential change] will *in fact* result in inadequate representation." ECF No. 50 at 23 (emphasis in original) (quoting *Brumfield*, 749 F.3d at 346); *see also Burgum*, slip op. at 8 ("[The group] admits, it presently cannot know what litigation position or defenses BOEM will pursue." (internal quotation and omission omitted)). If the impending suspension of an administrative rule could not overcome the first presumption for the inadequate representation factor in *Burgum*, then Proposed Intervenors' far more tenuous allegations of an upcoming change in litigation strategy do not. Proposed Intervenors fail to "point[] to *specific conduct* showing that the party at issue inadequately represented [their]

11

interests." *Burgum*, slip op. at 7 (emphasis added). Even more, Defendants themselves oppose intervention because Proposed Intervenors' allegations of inadequate representation are "based on nothing more about than speculation about this case's future." ECF No. 62 at 1.

Proposed Intervenors do not demonstrate a sufficient interest and do not provide sufficient allegations of an adversity of interest to overcome the presumption of adequate representation. Thus, they do not satisfy at least two factors they must show for intervention by right.

### II. The Court Denies Proposed Intervenors Permissive Intervention

If the Court denies intervention by right, Proposed Plaintiffs request it grant permissive intervention. ECF No. 50 at 23–24. Permissive intervention may be granted if the movant "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B); *Bush*, 740 F.3d at 359 ("Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.") But that is not the only question. Even in permissive intervention, "a district court should consider . . . whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). A district court does not abuse its discretion if it finds that the movant's interests are adequately represented, and the movant would not "significantly contribute to the development of the factual issues." *See id.*

As analyzed, under *Burgum*, Proposed Intervenors remain adequately represented for now. And this case is an Administrative Procedure Act challenge to an agency rule. Thus, the review is cabined to the administrative record. 5 U.S.C. § 706. Proposed Intervenors could do nothing to "significantly contribute to the development of the factual issues" because the

Court may only consult the administrative record. *League of United Latin Am. Citizens*, 884 F.2d at 189. Thus, in its discretion, the Court denies permissive intervention. *Bush*, 740 F.2d at 359 (reversing denial of permissive intervention for an abuse of discretion is "so unusual as to be almost unique" (quoting *United Gas Pipe Line Co.*, 732 F.2d at 471)).

### III. The Court Grants Leave to Appear as Amici

Because Proposed Intervenors may not intervene, "a third party can contribute usually most effectively and always most expeditiously by a[n] [amicus brief] and not by intervention." *Bush*, 740 F.2d at 359 (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)). In the Northern District of Texas, an amicus brief may be filed with "leave of the presiding judge." LOC. CIV. R. 7.2(b). Though Proposed Intervenors cannot satisfy the intervention standards, they can provide arguments and insights that current parties may not. Thus, the Court **GRANTS LEAVE** for Proposed Intervenors to file an amicus brief if they elect. If they do, they must do so **on or before May 2, 2025**. The brief must comply with Local Rule 7.2.

CONCLUSION

Accordingly, the Motion is **DENIED**. The Court **GRANTS LEAVE** under Local Rule 7.2(b) for Madison, Wisconsin, Columbus, Ohio, and Doctors for America to file an amicus brief.

**SO ORDERED**.

April 15, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

13